## SALINAS et al. v. SECURITY TRUST & SAVINGS BANK et al.

Circuit Court of Appeals, Fifth Circuit.
May 7, 1928.

No. 5252.

1. Marriage ⬅50(1)—Evidence held to sustain finding of no common-law marriage.

In suit by alleged common-law wife to recover half interest in community property, evidence *held* to sustain finding that there was not a common-law marriage.

2. Marriage ⬅50(1)—Father's recognition of sons and leaving property to them held insufficient to prove common-law marriage relation between him and their mother.

Fact that father recognized sons and left them some of his property *held* insufficient, in view of other circumstances, to prove that common-law marriage relation existed between him and their mother.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit by Luisa Mesa Salinas and husband against the Security Trust & Savings Bank and another, trustees, and another. Decree of dismissal, and plaintiffs appeal. Affirmed.

M. J. Raymond and R. D. Wright, both of Laredo, Tex., for appellants.

Lemuel H. Doty, of Biloxi, Miss., Marshall Hicks, of San Antonio, Tex., T. C. Mann and Yale Hicks, both of Laredo, Tex. (Hicks, Hicks, Dickson & Bobbitt, of San Antonio, Tex., and Mann, Neel & Mann, of Laredo, Tex., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This was a suit by the alleged common-law wife of Leonard Haynes, deceased, to recover from the trustees of his estate a half interest in the community property.

The District Judge who heard the witness held that the evidence was insufficient to prove a common-law marriage, and dismissed the suit.

About the first of the year of 1886, Leonard Haynes, a young man of college education, was living in the village of Carrizo, Zapata county, Tex. His American associates were few, and consisted principally of the county officers. Several of them had married Mexican women. Haynes was county surveyor. He became acquainted with Luisa Mesa, a Mexican Indian girl 15 or 16 years old, who was living with her parents on the Potrero ranch near the village. Neither she nor her parents could read or write. Luisa testified that Haynes asked her to be his wife, and she agreed, but no marriage ceremony was performed, that he built a one-room hut in which they both lived for a while, and that he then took her to the Venados ranch several leagues away. It was commonly known in the neighborhood that Haynes and Luisa were intimate. Three sons were born to them, the first in 1886, the second in 1888, and the third in 1890. Certificates of baptism were introduced in evidence, from which it appears that Luisa Mesa was the mother, but the name of the father was left blank. Luisa testified that she told the priest she was not married, because the church did not recognize that kind of marriage, and that she had never heard of it until recently. Two or three Mexican witnesses testified that Haynes introduced Luisa to them as his wife, but one of her brothers, a niece, and a close woman friend each testified that they had never been informed of the alleged marriage. All the American witnesses in the case testified that Haynes was understood to be a single man, and that he had never introduced Luisa to any of them as his wife. It is undisputed that Luisa, at both the Potrero and Venados ranches, lived in a one-room hut with a thatched roof. Whether Haynes and Luisa were married or not, they were never divorced. In 1891 Haynes married a young lady of good family

in Laredo, some 60 miles from Carrizo. She obtained a divorce from him in 1900. Haynes subsequently had a child by and then married his present wife, Alice Doran, who survived him upon his death in 1926. In 1895 Luisa and her present husband, Salinas, were married by a priest. Haynes recognized the sons born of his intimacy with Luisa, sent them to school, assisted them in business, and before his death left the two surviving ones property of the value of about $40,000.

[1, 2] We are unable to say that the District Judge erred in refusing to sustain the theory of a common-law marriage. According to all the evidence, Luisa did not receive the treatment that a man of Haynes' standing and pretensions would naturally be expected to accord to his wife. The evidence is too meager to show that there was any contract of marriage. If even Luisa had thought that there had been a marriage, it seems that she would have assumed her husband's name, and would have had it inserted in the certificates of baptism. That she did not consider there had been a marriage is strongly indicated by her failure to procure a divorce before contracting another marriage with Salinas, her present husband. It is not reasonably to be supposed that Haynes would have taken the chance of being married in 1891 without first being divorced from Luisa. The fact that he recognized Luisa's sons as his and left them some of his property is not sufficient, in view of the other circumstances to prove that the marriage relation existed between him and their mother.

It is argued that Haynes and Luisa were partners even if they were not husband and wife and that she therefore would be entitled to a share of the property accumulated during the partnership, the title to which was taken in his name. But, aside from the failure of the bill of complaint to allege a partnership, there is no evidence that Luisa contributed to the acquisition of any property.

The decree is affirmed.